# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

PARISH M. GOLDEN,
       Plaintiff,

v.                                                                                      Case No. 17-C-498

BRIAN FOSTER, et al.,
       Defendants.

## ORDER

On June 11, 2018, plaintiff filed a motion for leave to amend his complaint. He also filed his proposed third amended complaint. I will allow him to amend and screen his complaint. I will also address plaintiff's other pending motions.

### I.    SCREENING OF THE THIRD AMENDED COMPLAINT

a. Legal Standard

Federal law requires me to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). I must dismiss a complaint or portion thereof if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). I am obliged to give a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

b. The Complaint's Allegations

Plaintiff is incarcerated at the Waupun Correctional Institution (WCI). He is suing: Warden Brian Foster, Health Services Manager Nancy White, Health Service

Manager Chrystal Marchant, Correctional Officer Thomas Reese, Correctional Officer Jodi Barrett, and Correctional Officer Crystal Kelly.

Plaintiff alleges that "[t]he current system of filling medication orders at WCI poses a substantial risk of serious harm to the plaintiff . . . [because] there is to[o] much time wasted in the process of pr[e]scribers placing the medications on the medication cart in RSH (segregation) after the refill has been refilled by central pharmacy." Docket No. 67-1 at 4. He explains that, at WCI, health services personnel deliver medications to the housing units and then correctional officers maintain the medication cart and distribute the medication to the inmates.

On Friday, November 11, 2016, plaintiff submitted a medication refill request for his prescription of Gabapentin, a pain reliever that was set to run out on November 14, 2017. The request was sent to the central pharmacy, which received it the next day. On Monday, November 14, 2016, the pharmacy sent the refill to WCI.

Plaintiff alleges that, on November 14, his supply of Gabapentin ran out. The next day, plaintiff wrote a health services request to defendant Nancy White, informing her that he was without his pain medication. A nurse responded the following day, on November 16, and indicated that the medication had been sent to plaintiff's unit. Plaintiff alleges that correctional officers Barrett and Kelly received the medication on November 16, but they "held it" and did not distribute it to plaintiff until November 18. Plaintiff states that he suffered intense pain because he was without his pain medication from November 14 through November 18.

Plaintiff also indicates that defendant Reese incorrectly marked the medication distribution log on the mornings of November 15-18. Rather than placing a "U" in the

2

box, which would have alerted the health services unit (HSU) that the medication was unavailable, Reese inserted his initials, indicating that the medication had been distributed. Plaintiff asserts that correctional officers properly marked the log with a "U" for the evening and nighttime medication passes on those days.

Plaintiff's third amended complaint also adds allegations about a second incident where there was a delay in receiving his medication. His earlier complaint had indicated that an incident happened on these dates, but failed to include supporting facts. Now, plaintiff alleges that he was prescribed psyllium caps for constipation, which ran out on August 29, 2017. He did receive his psyllium caps against until September 4, 2017. During the interim, he suffered physical pain because his constipation caused the hemorrhoids in his colon to open and bleed. Plaintiff alleges that Foster and Marchant failed to have the nurses and staff place the plaintiff's medication on the medication cart immediately after it was received from the pharmacy, even though they were subjectively aware of the delays in the medication ordering system.

Finally, plaintiff describes at length the medication ordering process under which handwritten prescriptions are faxed to the pharmacy. He alleges that this process results in delays and errors. He asserts that time is wasted because prescribers handwrite the medication order, Health Services Unit staff photocopy the order, and then staff fax the order to the Central Pharmacy. He alleges that there are problems with the legibility of prescribers' handwriting, confusion over inmates' medication records, and incompatibility of complex medications that leads to pharmacist interventions, all of which in turn slow down the medication ordering process.

Plaintiff alleges that, before the November, 2016, incident, he had contacted Foster and Marchant about the medication ordering system at WCI. He further alleges that Foster and Marchant are subjectively aware of the problems with the medication ordering system, and that they are responsible for implementing and enforcing policies that ensure inmates receive their medications. He alleges that White, a HSU manager like Marchant, is also responsible for making policies that ensure plaintiffs get their medications on time. On December 12, 2016, plaintiff contacted Foster again and wrote him a letter asking him to fix the pharmacy system at WCI. Foster responded that he had spoken to Marchant about medication refill issues.

Plaintiff seeks injunctive and declaratory relief for inadequate medical care against all defendants in their official capacities. He seeks nominal and punitive damages against defendants Foster, White, Reese, Barrett, Kelly, and Marchant.

c. Analysis

Overall, not much has changed between this complaint and plaintiff's second amended complaint. Plaintiff's allegation that the medication ordering system at WCI is inadequate and resulted in a delay in receiving his medication still form the basis of his complaint. According to plaintiff, staff at WCI sent the refill request to the central pharmacy, which filled it the next day. According to plaintiff, it was not distributed to him. Plaintiff followed up by writing a request to White on November 15, she delegated the response to a nurse, who responded the next day that the medication had been sent to the segregation unit on November 16. According to his complaint, Kelly and Barrett "held" the medication in the segregation security "bubble" for two more days that he did not receive his medication until November 18.

Accordingly, I will still allow plaintiff to proceed on an Eighth Amendment deliberate indifference claim against Foster in his official capacity, and against White, Reese, Barrett, and Kelly in their personal capacities. He may also proceed against Marchant in her personal capacity. I will also issue an updated scheduling order once the defendants answer.

## II. Motion to Appoint Counsel

I have discretion to recruit counsel to represent a litigant who is unable to afford one in a civil case. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. § 1915(e)(1); *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866-67 (7th Cir. 2013). Once a plaintiff demonstrates he has made a reasonable attempt to secure counsel on his own, I examine "whether the difficulty of the case – factually and legally – exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar*, 718 F.3d at 696 (citing *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007)). This inquiry focuses not only on a plaintiff's ability to try his case, but also includes other "tasks that normally attend litigation" such as "evidence gathering" and "preparing and responding to motions." *Id.*

I am satisfied that plaintiff has tried to secure counsel on his own, so the only remaining question is whether plaintiff can present his case on his own. At this time, I believe plaintiff is capable of doing so. Indeed, he appears to be much more sophisticated than many prisoner plaintiffs. Plaintiff's submissions are coherent, thoughtful, and easy to follow. His briefs and motions demonstrate an understanding of the law and how it applies to the facts at hand. Indeed, he was able to ably present a

*Monell* claim, something that can be challenging. Plaintiff also has the benefit of prior litigation on this very subject in case 12-C-1270 in this District. That is, he can draw on his own past experience with nearly identical issues. At this time, I am also in possession of some the discovery requests that he has submitted, and I am satisfied that he is able to determine what information he needs and how to ask for it. If, after the defendants file a motion for summary judgment, the plaintiff believes he cannot respond, he may renew his motion and I will consider it at that time.

### III. Motion to Appoint Medical Expert

Plaintiff filed a motion asking me to appoint two experts because the defendants disclosed during discovery that they intend to call medical expert witnesses during trial. I first note that the defendants deny they will using an expert, but state they will solicit testimony from James Greer and Dr. Ryan Holzmacher, both DOC personnel, about DOC's medication policies and practices. Docket No. 53-1 at 2-3. But even if the defendants intended to call an expert, Federal Rule of Evidence 706 does not provide a mechanism for indigent plaintiffs to have their litigation subsidized by the court or by the defendants. *See Kennedy v. Huibregste*, No. , 2015WL187299, *3 (E.D. Wis. Jun. 29, 2015) (citing *Brown v. United States*, 74 Fed. Appx. 611, 614-15 (7th Cir. 2003)). Rule 706 states:

> On a party's motion or on its own, the court may order the parties to show cause why expert witnesses should not be appointed and may ask the parties to submit nominations. The court may appoint any expert that the parties agree on and any of its own choosing. But the court may only appoint someone who consents to act.

This means that a court can "appoint an expert to help sort through conflicting evidence . . . but it need not appoint an expert for a party's own benefit . . . ." *Turner v. Cox*, 569

6

Fed. Appx. 463, 468 (internal citations omitted). Experts appointed under this rule are meant to help the court evaluate conflicting evidence, not to assist on party or another. Plaintiff has not presented any reason for me to believe that a neutral expert is necessary in this case (at least at this point in time), so I will deny his motion.

### IV. Motions to Compel

Also before me are two motions to compel. In this first motion, plaintiff asks me to order the defendants to answer a particular request to admit in his third request for admissions, specifically request number six. It reads:

> Admit that Exhibit 3 –DOC – 3026 Medication/Treatment Record at Psyllium Caps at 8-30-17 and 8-31-17 has "U" written in the box for unavailable and Exhibit 4 – DOC – 3026 Medication/Treatment Record at Psyllium Caps at 9-1-17 and 9-3-17 has a "U" written in the box for unavailable.

Docket No. 59 at 1. Defendants objected because the request was "duplicative" and "outside the scope of the present lawsuit," but affirmatively alleged "the document speaks for itself." *Id.*

Plaintiff's second motion to compel also concerns discovery requests (specifically, requests to admit) regarding medication issued between August 28, 2017 and September 4, 2017. Docket No. 63 at 1. Here, plaintiff asks the defendants to admit that documents produced in discovery have either a "U" or a blank space where the officer distributing the medication would indicate whether a particular medication was distributed or unavailable to the prisoner. *Id.* Defendants objected, again, on the basis that the requests were outside the scope of this lawsuit and affirmatively alleged that the documents spoke for themselves. *Id.* at 2.

7

I will grant the plaintiff's motions to compel and order the defendants to respond to the interrogatory and requests to admit that are the subjects of the motions. Without the benefit of the defendants' position (they responded to neither motion), the information available to me is that *they* produced documents that contain medication distribution records in response to plaintiff's discovery requests. Plaintiff's requests to be certain of what the "U" and blank boxes signify are reasonable, especially in light of allegations about these dates in his third amended complaint. Defendants have 21 days from the date of this order to respond to Interrogatory Number 6 in plaintiff's third set of interrogatories and Requests to Admit One through Eight in plaintiff's fourth request to admit.

## V. Motion for Judicial Notice

Plaintiff also filed a motion asking me to take judicial notice of the court records in five cases previously litigated in this district: 06-C-537, 12-C-1270, 15-CV-1517, 14-C-1302, and 06-C-862. He brings this motion under Federal Rules of Evidence 902 and 1005, which address self-authenticating evidence and using copies of public records to prove content respectively. However, the rule that governs judicial notice is Federal Rule of Evidence 201. It states:

> The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

Fed. R. Evid. 201(b). Just because the documents on the court's electronic docket are filed does not mean they are "generally known" or "accurately readily determined." Courts can take judicial notice of filings in other proceedings for the limited purpose of

establishing the fact of such litigation and related filings. *Opoka v. Immigration & Naturalization Service*, 94 F.3d 392, 395 (7th Cir.1996) (citing *United States v. Jones*, 29 F.3d 1549 (11th Cir.1994)). Judicial notice does not (generally) extend to the truth of matters asserted in past judicial proceedings. *See General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081-83 (7th Cir. 1997). Therefore, to the extent plaintiff wants the filings in these past cases considered evidence in this case, his motion is denied. I can, however, take judicial notice of the *fact* of these lawsuits.

## VI. Motion to Vacate and Stay

Plaintiff also filed a motion to extend the discovery deadline and vacate the scheduling order. At this point, his motion is moot and I will deny it accordingly. As I mentioned previously, I will issue a new scheduling order (that will allow a limited amount of time for discovery) once the defendants answer the third amended complaint.

## VII. Conclusion

**THEREFORE, IT IS ORERED** that plaintiff's motion for leave to file an amended complaint (Docket No. 67) is **GRANTED**. Pursuant to Civil L.R. 15(c), the clerk's office shall docket plaintiff's third amended complaint (Docket No. 67-1) as the operative complaint in this case.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiff's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on defendants Barrett and Kelly.

**IT IS FURTHER ORDERED** that defendants shall file a responsive pleading to the third amended complaint.

**IT IS ALSO ORDERED** that plaintiff's motion for the appointment of counsel (Docket No. 53) is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that plaintiff's motion to appoint a medical expert (Docket No. 55) is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's first motion to compel (Docket No. 59) and second motion to compel (Docket No. 63) are **GRANTED**. The defendants have 21 days from the date of this order to respond to the contested requests.

**IT IS FURTHER ORDERED** that plaintiff's motion to vacate the scheduling order and stay deadlines (Docket No. 62) is **DENIED AS MOOT**. I will enter a revised scheduling order setting deadlines for discovery and the filing of dispositive motions after defendants respond to plaintiff's second amended complaint.

Dated at Milwaukee, Wisconsin, this 17th day of September, 2018.

s/Lynn Adelman
LYNN ADELMAN
UNITED STATES DISTRICT JUDGE